**UNITED STATES of America, Appellee,**

**v.**

**Wayne HUNTSMAN; Ralph Huntsman, Appellants.**

**No. 93–2527.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 10, 1993.

Decided March 3, 1994.

---

Counsel who presented argument on behalf of the appellant was Samuel A. Perroni of Little Rock, Arkansas. The Honorable William R. Wilson, who at the time was in private practice, appears on the brief.

Counsel who presented argument on behalf of the appellee was Sandra Wilson Cherry, Assistant United States Attorney, Little Rock, Arkansas.

Before HANSEN, Circuit Judge, JOHN R. GIBSON * and FRIEDMAN **, Senior Circuit Judges.

JOHN R. GIBSON, Senior Circuit Judge.

Wayne and Ralph Huntsman are again before us, now contending that they should not have been convicted for causing others to make false statements to the government, 15 U.S.C. § 714m(a) (1988). When the Huntsmans first appealed, we reversed the district court's grant of a judgment non obstante veredicto in their favor. *United States v. Huntsman*, 959 F.2d 1429 (8th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 201, 121 L.Ed.2d 143 (1992) (*Huntsman I*). Upon remand and reinstatement of the verdict,

they moved the district court [1] to dismiss the indictment, arguing that the government so obfuscated the meaning of the term they caused to be used as to make the statute under which they were convicted void for vagueness. The district court denied this motion. We affirm the judgment of the district court.

The Huntsmans are farmers who participated in the Rice Diversion and Deficiency program. Under 15 U.S.C. § 714m(a), it is a crime willfully and knowingly to cause a false statement to be made to the Commodity Credit Corporation for the purpose of obtaining money for oneself. A jury found the Huntsmans guilty of causing four individuals to falsely represent themselves as rice "producers" in a contract with the Commodity Credit Corporation. As a result of the false statements, the four individuals received government moneys which they were not actually entitled to. They passed the money on to the Huntsman brothers, who would not have been entitled to the money in their own right because they had already received the maximum amount a person could legally receive. *See* Agricultural and Food Act of 1981, § 1101(1), 95 Stat. 1263. The district court entered a j.n.o.v. for the Huntsmans, in part on the ground that there was a fatal variance between the acts charged and those proved, and in part on the ground that the evidence was insufficient. In *Huntsman I*, we reversed and ordered the district court to reinstate the jury's verdict.

Back in the district court, the Huntsmans again moved the court to dismiss the indictment, this time on the ground that the term "producer" was so vague that the Huntsmans' due process rights were violated by being convicted of using the term falsely. The district court denied their motion and they appeal.

Simply put, the Huntsmans argue that they could not know that the statements they caused the four individuals to make (i.e., that

* The HONORABLE JOHN R. GIBSON was Circuit Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted, and took senior status on January 1, 1994, before the opinion was filed.

** The HONORABLE DANIEL M. FRIEDMAN, Senior United States Circuit Judge for the Federal Circuit, sitting by designation.

1. The Honorable G. Thomas Eisele, Senior United States District Judge for the Eastern District of Arkansas.

the individuals were "producers") were false, and that therefore they had no notice that it was illegal to make the statements. They base this argument on certain discrepancies between the definition of the word "producer" in the regulations, in the actual contracts at issue, in testimony at trial, and in our *Huntsman I* opinion.

The Huntsmans actually present several different types of argument under the guise of a due process vagueness objection.

■ First, they argue that the *Huntsman I* panel wrongly applied the definition of "producer" from 7 C.F.R. § 713.50(c) (1984), instead of the applicable definition in 7 C.F.R. § 719.2(t) (1984), which they argue is the regulation governing the program which they were convicted of bilking. Section 713.-50(c)(1) states: "The producer must be a person who shares in the risk of producing the program crop produced in the current year (or shares in the proceeds therefrom) ... or would have shared in the crop if it had been produced...." Section 719.2(t) defines producer as someone who is *"entitled* to share in the crops ... or [crop] proceeds." (Emphasis added). The Huntsmans argue that the four individuals who signed the price support contracts were *entitled* to share in the crop proceeds under their lease contracts with the Huntsmans, though they did not actually do so. Therefore, they argue that the four individuals were producers under one definition, though not the other. We need only say that the Huntsmans were convicted of knowingly causing false statements to be made. That false statement (the same in each of the four instances) was the statement in a Contract to Participate in Price Support Programs that the signers were "producers." The price support contract itself stated that it defined "producer" as "a person who ... shares or would have shared had the crop been produced, in the risk of producing the crop (or shares in the proceeds therefrom) as determined in accordance with 7 C.F.R. Part 713." That definition—the one stated in 7 C.F.R. § 713.50(c) and accurately reproduced in the contract—is clear. If the Huntsmans mean to argue that there was some doubt about what the contracts at issue said, that is a fact question about state of mind (and one already decided in this case), not a due process question about whether 15 U.S.C. § 714m(a), forbidding false statements to the Commodity Credit Corporation, is unduly vague.

■ As another aspect of their due process argument, the Huntsmans contend that the government introduced testimony at trial consistent with the section 713.50(c) definition, rather than the section 719.2(t) one. As we have already seen, such testimony would be entirely consistent with the government's theory about what the false statement was. At any rate, the discrepancy between the testimony and the terms of the price support contract, if any, was a matter for cross-examination by the Huntsmans' counsel, not a denial of due process.

■ Finally, though what we have already said disposes of their argument, we also observe that none of the variations in the definition of producer would make any difference to the outcome of this case. *See Chapman v. United States,* 500 U.S. 453, ——, 111 S.Ct. 1919, 1929, 114 L.Ed.2d 524 (1991) (when First Amendment rights not implicated, vagueness claim evaluated as statute applied to facts of particular case). The government's theory of the case was that the lease contracts were shams, and that despite the existence of a "paper structure," the individuals were never actually entitled to a share in the crop proceeds. *Huntsman I,* 959 F.2d at 1437. Whether the definition of "producer" is that the individuals were entitled to share in the crop proceeds or that they actually shared in the proceeds or the risk, if the lease contracts were shams, the individuals satisfied neither definition. We have already held that any "entitlement" represented by those "false front" leases could be disregarded. *Id.* The issues the Huntsmans raise here have been examined and discredited in our earlier opinion.

We affirm the judgment of the district court.